IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Phillip M. Miller, | ) | Civil Action No. 6:12-1223-MGL-KFM |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |

The petitioner, a state prisoner who is proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently confined at McCormick Correctional Institution in the South Carolina Department of Corrections ("SCDC"). During the July 2003 term of the Greenville County Court of General Sessions, the petitioner was indicted on one count of petit larceny and one count of burglary, second degree (App. 268-71). On April 7-8, 2004, the petitioner was tried by jury on both charges. At trial, the petitioner was represented by James L. Goldsmith, Jr. (App. 1-145). Assistant Thirteenth Circuit Solicitor Jennifer Byford represented the State. On April 8, 2004, the petitioner was found guilty on both charges and was sentenced to life imprisonment without parole ("LWOP") for the burglary, second

degree conviction[1] and to ten years imprisonment on the petit larceny conviction (App. 140, 144).

On April 14, 2004, the petitioner filed a motion for a new trial. In the motion, the petitioner argued that his co-defendant, David Roach, who was one of the State's witnesses at trial, provided perjured testimony. Roach had testified at the petitioner's trial that he had not used crack cocaine since December 2002, but he tested positive for cocaine prior to his sentencing hearing. The petitioner contended this constituted after-discovered evidence that warranted a new trial. By order filed November 13, 2006, the trial court found the evidence against the petitioner was convincing and overwhelming, and, therefore, there was very little chance that the new evidence petitioner was offering would change the outcome of the trial. The motion was denied (App. 149).

During the pendency of the motion for new trial, the petitioner filed three other matters with the state courts. On August 17, 2004, the petitioner filed an application for post-conviction relief ("PCR"), asserting ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and improper sentence enhancement and illegal sentence. The petitioner specifically listed twelve allegations regarding trial counsel. The State filed its return on January 11, 2005. A hearing was held on June 21, 2005, before the Honorable D. Garrison Hill, Circuit Court Judge. The petitioner was present and was represented by Maurice McNab. Assistant Attorney General Karen C. Ratigan represented the State. During the hearing, the PCR court was informed of the pending motion for new trial and consequently found that it did not have jurisdiction to address the PCR application in accordance with Rule 29, SCRimP. Therefore, on July 5, 2005, the PCR court filed an

---

[1]The petitioner had the following prior convictions: 1981 housebreaking and disorderly conduct, accessory after the fact, and grand larceny; 1983 accessory after the fact of house breaking; 1984 breaking into an automobile and petit larceny; 1985 assault and battery of a high and aggravated nature; 1985 armed robbery and attempted assault with intent to commit criminal sexual conduct, first degree; and a 2000 assault and battery of a high and aggravated nature, resisting arrest, and attempted conspiracy (App. 141-42).

order of dismissal denying and dismissing application the PCR application without prejudice.

The petitioner sent a letter dated January 9, 2006, to Chief Justice Toal. By order of the South Carolina Supreme Court filed April 5, 2006, the matter raised in the letter was dismissed pursuant to *Key v. Currie*, 406 S.E.2d 356 (S.C. 1991), because no extraordinary reason existed to entertain it in the Supreme Court's original jurisdiction.

On or around May 31, 2006, the petitioner filed a *pro se* notice of appeal. In an order filed June 19, 2006, the South Carolina Supreme Court dismissed the notice without prejudice. In the order, the Supreme Court noted the petitioner had filed a notice of appeal seeking a "belated" direct appeal. Since such relief under *Davis v. State*, 342 S.E.2d 60 (S.C. 1986), and *White v. State*, 208 S.E.2d 35 (S.C. 1974), must be sought by filing an application for PCR in the circuit court, the notice of appeal was dismissed without prejudice. The remittitur was issued on July 6, 2006.

**Direct Appeal**

The petitioner timely served and filed a notice of appeal on October 17, 2007.[2] The petitioner was represented on appeal by Elizabeth A. Franklin-Best, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. In his amended final brief, the petitioner asserted two issues. First, he argued that the trial judge should have granted his motion for a new trial since a key witness committed perjury (App. 155-57). Second, the petitioner contended the trial court judge should have granted his motion for a directed verdict (App. 158-60). The State filed a final brief of respondent (App. 164-79). In an unpublished opinion filed June 15, 2009, the South Carolina Court of Appeals affirmed the petitioner's convictions pursuant to Rule 220(b) and the following authority:

---

[2] An amended notice of appeal explaining the delay in filing was filed and served on October 30, 2007.

3

1. As to the motion for new trial: *State v. Needs*, 333 S.C. 134, 157-58, 508 S.E.2d 857, 869 (1998) ("To prevail on a motion for a new trial based on after discovered evidence, a defendant must show (1) the evidence is such as will probably change the result if a new trial is granted; (2) the evidence has been discovered since the trial; (3) the evidence could not have been discovered prior to trial by the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching."); *Id.* ("The granting of such a motion is not favored and, absent error of law or abuse of discretion, an appellate court will not disturb the trial judge's denial of the motion.").

2. As to the motion for a directed verdict: *State v. Gaines*, 380 S.C. 23, 32, 667 S.E.2d 728, 732-33 (2008) ("When ruling on a motion for a directed verdict, the trial judge is concerned with the existence or nonexistence of evidence, not its weight."); *Id.* at 32, 667 S.E.2d at 733 ("A defendant is entitled to a directed verdict when the state fails to produce evidence of the offense charged."); *State v. McCombs*, 368 S.C. 489, 493, 629 S.E.2d 361, 363 (2006) (stating if there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this court must find the case was properly submitted to the jury).

(App. 180-81). The remittitur was issued on July 1, 2009.

### Second PCR Action

On July 31, 2009, the petitioner filed another PCR application asserting claims of ineffective assistance of appellate counsel, ineffective assistance of trial counsel, improper sentence enhancement and illegal sentence, and that the circuit court lacked subject matter jurisdiction (App. 182-204). Specifically, the petitioner asserted trial counsel failed to timely file a notice of appeal, failed to demand a timely preliminary hearing, and failed to secure the petitioner's discovery of *Brady* material. (App. 189, 192-94). The petitioner further argued the petit jury in his case was unconstitutionally selected and was selected in a racially discriminatory manner (App. 195-96). The petitioner averred that counsel should have moved for the trial judge to recuse himself and should have moved to quash the indictment because it contained only a police officer as the sole witness (App. 196-97). The State served its return on December 29, 2009 (App. 205-10). On March 16,

2010, the petitioner filed amendments to his PCR application alleging 31 additional claims of ineffective assistance of counsel (App. 211-15).

On May 26, 2010, a PCR evidentiary hearing was held before the Honorable Robin B. Stilwell, Circuit Court Judge. The petitioner was represented by Rodney Richey. Assistant Attorney General Karen Ratigan represented the State. On September 20, 2010, the state issued its order of dismissal noting that it had reviewed the record and the testimony and arguments presented at the PCR hearing. The PCR court found the petitioner's testimony at the hearing was not credible and that trial counsel's testimony was credible (App. 263-64). The PCR court further found that trial counsel was competent in his representation of the petitioner and that the petitioner had failed to meet his burden of proof regarding trial counsel's alleged failures to (1) adequately convey the State's plea offer; (2) personally interview co-defendants before trial; (3) request a psychiatric evaluation; (4) object to a juror because she was an attorney; and (5) adequately represent petitioner in post-trial proceedings (App. 264-65). As to all of the petitioner's claims of ineffective assistance of counsel, the PCR court found that the petitioner had failed to meet both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984), that his attorney failed to render reasonably effective assistance or that he was prejudiced by his attorney's alleged ineffectiveness (App. 265-66).

### PCR Appeal

The petitioner timely served and filed a notice of appeal. On appeal, the petitioner was represented by Wanda H. Carter, Deputy Chief Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. The petitioner's appeal of the PCR court's order was perfected with the filing of a *Johnson* petition for writ of certiorari. In the *Johnson* petition, counsel asserted appellate counsel erred in failing to raise on appeal the issue of the trial judge's error in denying petitioner's motion to relieve trial counsel and request for time to secure counsel of his choice. The petitioner filed a *pro se* response to the *Johnson* petition raising three arguments. First, he contended the PCR court erred in failing to address his claim that his Sixth Amendment right

to effective assistance of counsel and a fair trial were violated when the trial court denied his motion to relieve counsel and for continuance so he could retain private counsel, as the petitioner informed the trial court that trial counsel laughed at him, called him a "nigger," and accused the petitioner of being guilty of the charges in question.  Secondly, the petitioner argued the circuit court lacked subject matter jurisdiction or, alternatively, he was deprived due process where the indictments were not filed in accordance with statutory mandate, and the petitioner was effectively deprived of notice of the charges against him.  Lastly, the petitioner asserted the circuit court did not have jurisdiction to impose an enhanced sentence where the State of South Carolina failed to execute an affidavit or proof of service with regard to the notice to seek a sentence of LWOP and the facts supporting such enhancement were neither admitted by the petitioner nor found by the jury (doc. 33-21 at p. 3).  In a document attached to the *pro se* brief, the petitioner raised 13 additional issues regarding his attorney and his trial (doc. 33-21 at pp. 21-24).

On April 18, 2012, the South Carolina Supreme Court issued its order denying the *Johnson* petition for writ of certiorari.  After consideration of the entire record as required by *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), the South Carolina Supreme Court denied the petition and granted counsel's request to withdraw.  The remittitur was issued on May 21, 2012.

**Third PCR Action**

On May 17, 2012, the petitioner filed his third PCR application alleging his sentence exceeds the maximum authorized by law, a denial of right to a jury, after-discovered evidence, ineffective assistance of trial counsel, and denial of due process and fundamental fairness by the court's denial of motion for a directed verdict and new trial by use of false and perjured testimony.  Specifically, the petitioner asserted he was denied due process where his sentence exceeded the maximum allowed by law.  Second, the petitioner claimed he was denied due process of a jury finding a verdict on any fact of a prior conviction used for LWOP.  Third, the petitioner claimed he was denied due process where trial counsel failed to object to the sentence exceeding the maximum allowable by statute

6

to sentence to LWOP.  The petitioner also contended the state allowed key witness David Roach to testify to false and perjured testimony and to benefit from the perjury by allowing Roach to plead guilty before the petitioner's trial and to hold his sentence in abeyance.  The petitioner further claimed trial counsel was ineffective for failing to conduct a proper pretrial investigation and trial counsel was ineffective for failing to secure a competency hearing. On June 6, 2012, the petitioner filed an amendment to his PCR application.  In the amendment, the petitioner asserted claims of ineffective assistance of PCR counsel, ineffective assistance of appellate counsel, and subject matter jurisdiction.  The State served its return and motion to dismiss on September 11, 2012.

On September 24, 2012, the PCR court filed its conditional order of dismissal. In the order, the PCR court found this matter should be summarily dismissed because the petitioner had failed to comply with the filing procedures of the Uniform Post-Conviction Procedure Act. S.C. Code Ann. §§ 17-27-10, *et. seq*.  The South Carolina Court of Appeals affirmed the convictions and sentences on June 15, 2009.  The PCR court found the petitioner was therefore required to file his application before June 15, 2010.   The application was filed on May 17, 2012, which was almost two years after the statutory filing period had expired (doc. 45-2 at p. 3).  The PCR court further found the application should be dismissed because it was successive to the previous application for PCR pursuant to *Land v. State*, 262 S.E.2d 735, 737 (S.C. 1980), *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991), and South Carolina Code Annotated § 17-27-90  (doc. 45-2 at p. 4).  Based upon its review of the pleadings in the matter, the PCR court expressed its intent to summarily dismiss the matter unless the petitioner advised the PCR court with specific reasons, factual or legal, why it should not dismiss the matter in its entirety.  The petitioner was granted 20 days from the date of service of the conditional order upon him to show why the order should not become final by filing any reasons he may have with the Clerk of Court for Greenville County, South Carolina, and also by filing a copy of his reasons with the Office of the Attorney General.

The petitioner filed a return to respondent's motion to dismiss and conditional order of dismissal on October 5, 2012 (doc. 45-4).  In his return, the petitioner argued that he was allowed to raise claims of ineffective assistance of PCR counsel claims under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and contended that the PCR court could review his claim that he "was denied his Sixth Amendment right to a jury making a finding to his life without parole sentence" (doc. 45-4 at p. 2).

On January 3, 2013, the PCR court filed its final order of dismissal finding the petitioner had not shown a sufficient reason why the conditional order of dismissal should not become final (doc. 45-5).  The PCR court found the petitioner had failed to present any issues that would allow the PCR court to overlook the expiration of the one year statute of limitations.  The PCR court further found the petitioner had the opportunity to litigate all issues related to his case at the evidentiary hearing for his first PCR application on May 26, 2010. *See Odom v. State*, 523 S.E.2d 753, 755 (1999) ("[A]n applicant is entitled to a full adjudication on the merits of the original petition, or 'one bite at the apple.'").  Therefore, the PCR court dismissed the third PCR application for the reasons set forth in the conditional order of dismissal.

**PCR Appeal**

On January 15, 2013, the petitioner filed a notice of appeal of the PCR court's dismissal.  By letter dated January 18, 2013, the South Carolina Supreme Court asked the petitioner for the required explanation of why the PCR court's determination was improper. The petitioner filed his explanation on January 31, 2013. On February 4, 2013, the South Carolina Supreme Court dismissed the petitioner's appeal of the third PCR action noting that the petitioner had failed to show that there was an arguable basis for asserting that the determination by the lower court was improper (doc. 45-9).  Accordingly, this matter was dismissed.  The remittitur was issued on February 21, 2013.

**UNDERLYING CASE FACTS**

On December 22, 2002, Investigator King of the Greenville County Sheriff's Office was off-duty and working his part-time security job at a Huddle House restaurant in Greenville, South Carolina. As he was leaving the restaurant at 4:30 a.m., Investigator King heard a smashing sound. He turned towards the noise and observed two males entering an area next to a Shoe Department store. King quickly got his car, an unmarked patrol vehicle, and drove across the street to investigate (App. 56-57). When he arrived at the store, King witnessed two black males exiting the store through a broken window. The men were running towards a car parked in front of the store, which was being driven by a white male. The men were carrying boxes of shoes as they ran. When the men got inside the parked car, King, who was dressed in his security uniform, activated his blue lights and pulled up beside them. King ordered the men to put their hands up and stay still. One of the passengers reached towards the floorboard, so King drew his weapon. King again ordered them to put their hands up, but the men ignored him and attempted to flee the scene (App. 58-59). Two of the men fled in opposite directions. King was able to seize the third subject, Kenneth Saxon. As King struggled to arrest Saxon, three individuals exiting a nearby Wal-mart assisted King in handcuffing Saxon. After Saxon was detained, he complained of physical distress, so King called EMS to the scene. (App. 59- 61).

After securing Saxon, King investigated the car the men left behind. He contacted the registered owner, Dana Roach, who identified her husband, David, as the driver of the vehicle. Ms. Roach told King that her husband had contacted her and told her about his trouble with the police that evening and had her to report the car stolen and pick him up. Eventually, Ms. Roach advised her husband to turn himself in, and he was picked up by law enforcement. Roach confirmed his wife's account of that night at the petitioner's trial (App. 62-3; 89-90).

After EMS evaluated Saxon, King advised him of his *Miranda* rights, which he waived. Saxon identified the petitioner as the third suspect. Shortly thereafter, Roach also stated the petitioner was the third suspect (App. 63-64; 80). At trial, Roach described the events of the night of December 22, 2002. After his wife came home from work, Roach took her car for a ride. As he was driving, Roach saw the petitioner walking along the road. Roach testified he offered the petitioner a ride because it was cold outside. Roach testified that he and the petitioner went "out looking for crack." They drove to Saxon's house in search of crack cocaine, but Saxon did not have any. They decided to go shoplift at Wal-Mart. When they arrived at Wal-mart, Saxon and the petitioner broke into the Shoe Department instead (App. 78-80).

Roach also testified that after he was arrested he had a conversation with the petitioner about the petitioner's involvement in the crime. Roach testified that the petitioner asked him not to reveal his identity since no one had seen his face. The petitioner also told Roach that he would deny Saxon's accusations regarding his involvement (App. 87).

Saxon also testified at trial that he had known the petitioner for five or six years. He testified the petitioner threw the rock through the window of the shoe store. They entered the store and began grabbing boxes of shoes. Saxon also admitted to having used crack cocaine earlier on the day of the crime (App. 97-101, 105).

The store manager for the Shoe Department testified that approximately $800 worth of items were taken from his store that night (App. 76).

## **FEDERAL PETITION**

In his federal petition for writ of habeas corpus, which was filed *pro se*, the petitioner makes the following claims of error (verbatim):

> **Ground One**: Sentence exceeds maximum authorized by law denying Petitioner Due process and Fundamental Fairness.

10

Supporting facts: At trial the court abuse its discretion by sentencing the applicant/petitioner to a sentence which exceeds maximum by sentencing the applicant to life without parole.

**Ground Two**: Denial of Right to a jury, denying Petitioner due process and fundamental fairness.

Supporting facts: The state denied Petitioner due process of a jury regarding the use of a prior conviction, only facts admitted by a defendant or proved beyond a reasonable doubt to a jury can be used to calculate a sentence, whether defendant pleaded guilty or been convicted at trial. The maximum sentence a judge may impose is a sentence based upon the facts admitted by defendant or proved to a jury beyond a reasonable doubt.

**Ground Three**: Trial judge should have granted petitioner's motion for new trial since a key witness committed perjury, denying him due process and fundamental fairness.

Supporting facts: Key witness David Roach was ask during trial, you were smoking crack for 18 years? Yes. Have you smoked since that night up to the present? No.  So you quit cold turkey on that night? Yes. During sentencing the trial judge ordered that he be give a drug test, he failed. See (Order, 11-13-06). Based of the false and perjured testimony the petitioner should have been granted a new trial because this perjured under oath denying petitioner due process and fundamental fairness.

**Ground Four**: Trial judge should have granted petitioner's directed verdict because evidence was insufficient and given by a witness that committed perjury denying petitioner due process and fundamental fairness.

Supporting facts: at the close of the State's case, Petitioner's counsel moved for a mistrial. See, (Tr. p.111, Lines 10-13). The Court denied the motion . The evidence that was submitted for the jury's consideration was insufficient as a matter of law, and the judge's ruling was erroneous. (Tr. page 56, Line 21 to p. 57, line 7) (Tr. p. 57, Line 8 to P. 58, Line 20.)(Tr. p. 57, Lines 16-18(Tr. p. 58, lines 3-4)(Tr. p. 58, Lines 13-16, p. 59, Line 17 to p. 60, line 24) denying due process and fundamental fairness.

**Ground Six**:  The court erred in denying petitioner's motion to relieve counsel denying him due process and fundamental fairness.

11

Supporting facts: Petitioner filed motion to relieve due to counsel racially calling him names, laughing at him and did no factual or legal investigation. Thus petitioner stated he wanted counsel relieved so that his family can retain counsel of their choice, but the court denied motion, and same counsel failed to file notice of appeal in petitioner's behalf, denying petition due process. (This issue was exhausted)

**Ground Seven**: Trial counsel was ineffective for failing to secure a competency hearing prior to the petitioner's trial denying petitioner due process and fundamental fairness.

Supporting facts: it should have been alerted by defense counsel that petitioner is incompetent to assist counsel and himself in preparing his defense. The petitioner cannot read or write and had to have assistance from one of the mccormick's library clerk that prepared this application, he has no comprehension to understand whats going on and what has been did to him. (This issue is pending in applicant/petitioner P.C.R. application).

**Ground Eight**: Trial counsel was ineffective for failing to conduct a proper pretrial investigation, denying petitioner due process and fundamental fairness.

Supporting facts: Trial counsel failed to investigate petitioners request for a mental evaluation, failed to investigate the laws and facts of the states notice to seek life without parole, denying petitioner' due process and fundamental fairness. (issue is currently pending for exhaustion).

The petition does not contain a ground five (doc. 1 at pp. 5-17).

On September 18, 2012, the respondent filed a return and motion for summary judgment (doc. 34). By order filed on September 19, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response in opposition on October 12, 2012 (doc. 38). On February 28, 2013, the respondent filed a supplement to the procedural history in the return and memorandum in support of the motion for summary judgment (doc.

12

45).  Another *Roseboro* order was issued on February 28, 2013, and the petitioner filed his response to the supplement on May 1, 2013 (doc. 48).

## APPLICABLE LAW

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds by Price Waterhouse v. Hopikins*, 490 U.S. 228

13

(1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### Exhaustion

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A).  In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1)  through a direct appeal, or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17–27–10, *et seq*.; *id.* § 17–27–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976).  If the PCR court fails to address a claim as is required by South Carolina Code  § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[3]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990).  In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [ v.*

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Boerckel*, 526 U.S. 838 (1999)]."  559 S.E.2d at 854.  Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003).  Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

### *Procedural Bar*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.  In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

15

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### *Cause and Prejudice*

Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir.2008).  "[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'"  *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding."  *Roach v. Angelone*, 176 F.3d 210, 222 (4th  Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent.  However,  "actual innocence" requires

16

"factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The Supreme Court recently held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial." *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012). This holding was specifically limited to "initial-review collateral proceedings," not appellate PCR proceedings. *Id.* at 1320. In order to overcome the default, the "prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318.

### Standard of Review

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

17

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo. See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### Ineffective Assistance of Counsel

In order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, the petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. With regard to the second prong, the petitioner must "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

The review of ineffective assistance of counsel claims in federal habeas is centered upon whether the state court decision was reasonable. 28 U.S.C. § 2254(d). Moreover, each step requires deference – deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ――, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ――, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

## ANALYSIS

### Grounds One, Two, and Six

In Ground One, the petitioner asserts that his sentence to LWOP violated his due process rights. He claims that the sentence exceeds the statutory maximum sentence allowed. The petitioner did not raise this allegation at trial, and it was not raised in his direct appeal. In Ground Two, the petitioner asserts he was denied his due process right to have a jury determine if he had the requisite convictions to be eligible for LWOP. This claim was also not raised at trial or in the direct appeal. In Ground Six, petitioner asserts the trial court erred in denying his request to relieve counsel which amounts to a due process violation.

19

While the petitioner did move to relieve counsel at the beginning of his trial, the denial of his motion was not challenged in the direct appeal.

Freestanding claims such as those raised by the petitioner must be raised at the trial level and then on direct appeal. *See Mizell v. Glover*, 570 S.E.2d 176, 180 (S.C. 2002) ("In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court."). Therefore, these claims are procedurally barred from federal habeas review absent a showing of cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lawrence*, 517 F.3d at 714.

To the extent the petitioner argues cause for the procedural default is established because his trial counsel was ineffective in failing to raise the issues asserted in Grounds One and Two as to his sentence to LWOP, the PCR court found that the petitioner failed to meet his burden of proving trial counsel was ineffective in this regard under *Strickland*:

> Regarding the Applicant's contention that trial counsel should have argued against his sentence, this Court notes that as notice of the State's intention to seek life imprisonment without parole was served, a guilty verdict meant an automatic imposition of that sentence. *See* S.C. Code Ann. § 17-25-45 (Supp. 2003). This Court finds trial counsel explained this to the Applicant and did not err in declining to make such a frivolous argument.

(App. 265-66). While ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an "independent constitutional violation." *Coleman*, 501 U.S. at 755. The PCR court's finding was reasonable, and the petitioner has failed to show that ineffective assistance by his trial counsel constitutes cause for the procedural default of Grounds One and Two.

20

In his response in opposition (doc. 38 at pp. 5-7), the petitioner contends that his appellate counsel was ineffective[4] in failing to raise these issues on direct appeal and that, for this reason, cause is established for the procedural default. *Williams v. French*, 146 F.3d 203, 215 (4th Cir.1998) (" [I]f appellate counsel were constitutionally ineffective under the standard established in *Strickland*, cause is established to excuse the procedural default."). It is well-settled that reviewing courts must afford appellate counsel "the presumption that he decided which issues were most likely to afford relief on appeal." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citation omitted). "Counsel is not obligated to raise all nonfrivolous issues on appeal." *Id*. "'Winnowing out weaker arguments and focusing on issues more likely to prevail is the hallmark of effective appellate advocacy.'" *Id*. (quoting *Smith v. Murphy*, 477 U.S. 527, 536 (1986)). "Generally, only when ignored issues are clearly stronger than those that were presented will the presumption of effective assistance of counsel be overcome." *Id*. (citation omitted).

As set forth above, the petitioner's appellate counsel raised two issues on direct appeal: the trial judge should have granted a new trial since a key witness committed perjury, and the trial judge should have granted the petitioner's motion for a directed verdict (App. 150-63). The petitioner has not shown that the issues regarding his sentence to LWOP and denial of his request to relieve counsel are "clearly stronger than the ones presented." Accordingly, the petitioner cannot show that ineffective assistance of appellate counsel was the cause for the procedural default.

---

[4]In his appeal of the denial of his second PCR application, the petitioner's counsel asserted in the *Johnson* petition for writ of certiorari that the petitioner's appellate counsel erred in failing to raise on appeal the issue of the trial judge's alleged error in denying petitioner's motion to relieve trial counsel and request for time to secure counsel of his choice (doc. 33-18 at p. 3). In his *pro se* response to the *Johnson* petition, the petitioner contended the PCR court erred in failing to address his claim that his Sixth Amendment right to effective assistance of counsel and a fair trial were violated when the trial court denied his motion to relieve counsel and for continuance so he could retain private counsel (doc. 33-21).

In his response in opposition to the respondent's supplement to the motion for summary judgment, the petitioner appears to argue that failure to consider the claims will result in a fundamental miscarriage of justice as he is actually innocent (doc. 48). The petitioner submitted a copy of the Crime Scene Investigation Report that contains a statement from the petitioner's co-defendant, Roach, in which Roach told investigators that "the black guy with the green eyes is the one who threw the brick through the window" (doc. 48-1at p. 2). The petitioner argues that this "is not a description of Phillip Miller, petitioner in this case" (doc. 48).

To avail himself of the actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, a petitioner "must offer new reliable evidence ... that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir.1999) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)) (internal quotation marks omitted). The petitioner has made no such showing. In the statement submitted by the petitioner, Roach identified his two co-defendants as "the guy who was in the front passenger seat [who] you showed me a picture of," whom he identified at trial as the petitioner (App. 81), and "the black guy with green eyes." He stated that "the black guy with green eyes . . . threw the brick into the window and they both went into the store and came out with boxes" (doc. 48-1). At trial, Roach did not testify as to who threw the rock. Nothing in this statement or in Roach's testimony at trial indicates the petitioner's actual innocence, whether or not it was the petitioner who threw the rock, as Roach's testimony at trial and in the statement was that the petitioner and the other co-defendant (Saxon) both went into the store and stole shoes (App. 80; doc. 48-1 at p. 2). Roach also testified that he had a conversation with the petitioner about the petitioner's involvement in the crime. Roach testified that the petitioner asked him not to reveal his identity since no one had seen his face. The petitioner also told Roach that he would deny Saxon's accusations regarding his

involvement (App. 87).  Saxon also testified at trial that he and the petitioner entered the store and began grabbing boxes of shoes (App. 97-101).  While Saxon testified that the petitioner threw the rock, this inconsistency with Roach's statement to the police on this one point does not meet the standard for establishing an actual innocence claim as it does not show that it is more likely than not that no reasonable juror would have convicted him of burglary in the second degree and petit larceny in light of the new evidence.

Based upon the foregoing, Grounds One, Two, and Six are procedurally barred and should be dismissed.

### Ground Three

In Ground Three, the petitioner asserts the trial judge erred in denying his motion for a new trial because a "key witness" committed perjury.  At trial, the petitioner's co-defendant, Roach, testified that he had not smoked crack cocaine since the night of the crime (App. 90).  After the petitioner's trial, Roach was subjected to a drug test.  He tested positive for cocaine and admitted that he had smoked crack cocaine (App. 146-47).  The petitioner filed a motion for a new trial asserting that Roach had committed perjury when he testified (doc. 33-4).  The trial court denied the motion for a new trial, finding the evidence that Roach had lied when he testified that he had not smoked crack cocaine since the night of the crime was not material, but was merely impeaching, and the information would not have changed the outcome of the petitioner's trial (App. 146-49).  On appeal, the Court of Appeals affirmed (App. 180-81) the trial court's denial of the motion, citing *State v. Needs*, which states:

> To prevail on a motion for a new trial based on after discovered evidence, a defendant must show (1) the evidence is such as will probably change the result if a new trial is granted; (2) the evidence has been discovered since the trial; (3) the evidence could not have been discovered prior to trial by the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching.

508 S.E.2d 857, 869 (S.C. 1998).

The petitioner cannot show the Court of Appeals made an unreasonable determination of the facts in denying relief upon this claim as the Court of Appeals did not make any factual findings in its opinion affirming the petitioner's convictions (App. 181). The petitioner also cannot show the Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law. "To establish a constitutional due process claim, [a petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009). The petitioner cannot make such a showing here. The Court of Appeals was reasonable in affirming the denial of relief. As was noted by the trial court in its order denying the motion, Roach's statements about his use of crack cocaine since the burglary were not material and would only have been impeaching. The statement did not have a direct relation to the crime itself and instead went to Roach's actions during the period after the crime. At most, Roach's late admission that he had used crack cocaine since the burglary would have been impeaching. Further, as noted by the trial court, it was well established that Roach and Saxon were not credible. The strength of their testimony resulted from the fact that they both had very similar accounts of the events on the night/early morning of the burglary despite the fact they were unable to consult with one another before they were interviewed by law enforcement (App. 146-49).

Based upon the foregoing, Ground Three is without merit and should be dismissed.

### Ground Four

In Ground Four, the petitioner contends the trial court erred in denying his motion for a directed verdict (App. 111). The South Carolina Court of Appeals affirmed the denial of the motion in the direct appeal (App. 181). The petitioner cannot show the Court

of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law.

This claim goes to the sufficiency of the evidence. While such a claim is "cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir.1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Id.* at 405-406 (citing *Wright*, 505 U.S. at 292). Therefore, the petitioner is entitled to relief on this ground only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt'" based on the evidence presented. *Id.* at 406 (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).

In South Carolina, the crime of burglary in the second degree is, and was at the time of the petitioner's trial, defined as follows:

> (A) A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein.
> (B) A person is guilty of burglary in the second degree if the person enters a building without consent and with intent to commit a crime therein, and either:
>> (1) When, in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
>>> (a) Is armed with a deadly weapon or explosive; or
>>> (b) Causes physical injury to any person who is not a participant in the crime; or
>>> (c) Uses or threatens the use of a dangerous instrument; or
>>> (d) Displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or
>> (2) The burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or
>> (3) The entering or remaining occurs in the nighttime.

S.C. Code Ann. § 16-11-312. Larceny is the "felonious taking and carrying away of the goods of another against the owner's will or without his consent." *State v. Keith*, 325 S.E.2d 325, 326 (S.C. 1985) (citing *State v. Brown*, 260 S.E.2d 719 (S.C. 1979)). At the time of the petitioner's trial, "[s]imple larceny of any article of goods, choses in action, bank bills, bills receivable, chattels, or other article of personalty of which by law larceny may be committed, or of any fixture, part, or product of the soil severed from the soil by an unlawful act, or has a value of one thousand dollars or less, is petit larceny." S.C. Code Ann. § 16-13-30 (2004).

As stated above, there was sufficient evidence presented to support the denial of the motion for directed verdict for the second degree burglary charge. After hearing a loud smashing sound at the Shoe Department, Investigator King observed two black males exiting from the store, running towards a vehicle parked in front of the building. King noted that the two men had exited where the glass was broken, and they had boxes of shoes in their arms (App. 57-58). The driver of the vehicle (Roach) and the suspect who was detained at the scene (Saxon) both identified the petitioner as the other person who entered the shoe store that evening/early morning (App. 64). Roach testified the others had intended to shoplift at Wal-Mart so they could purchase crack (App. 79-80), and Saxon testified they were looking for ways to obtain goods to purchase crack (App. 98-99). Bill Whitmire, the store manager for the Shoe Department, testified that he never gave the petitioner or his co-defendants permission to be in the store after hours and that the value of the shoes taken was approximately $800 (App. 76).

The foregoing evidence was sufficient to support the denial of the motion for directed verdict as it relates to the second degree burglary charge and the petit larceny charge. The testimony established there was an entering of a building without consent. The testimony also supported a finding that the petitioner intended to commit a crime once he entered the building and actually did commit a crime while inside the building. The

testimony also established the entering occurred during the nighttime. The testimony further established that the petitioner and Saxon took shoes from the store without permission.

Based upon the foregoing, Ground Four is without merit and should be dismissed.

### Ground Seven

In Ground Seven, the petitioner asserts trial counsel was ineffective for failing to secure a competency hearing for him arguing that he was incompetent to assist counsel in preparing his defense. The PCR court denied relief upon a very similar claim. The PCR court noted that the petitioner argued trial counsel failed to request a psychiatric evaluation for him. The PCR court also noted trial counsel stated he observed nothing that would indicate the petitioner was mentally deficient and that the petitioner was "quite competent." The PCR court went on to find that the petitioner failed to meet his burden of proving trial counsel should have requested a psychiatric evaluation. The PCR court noted that trial counsel testified he had represented the petitioner for more than one year and never saw any indication that the petitioner needed a psychiatric evaluation. The PCR court further noted the petitioner failed to present any expert testimony that he suffered from a psychiatric or mental condition that would have affected his ability to participate in his own trial. The PCR court noted it could not speculate as to how the outcome of the trial would have been different if the petitioner had undergone a psychiatric evaluation, and thus the court denied relief upon this claim (App. 263-65).

The petitioner has failed to show that the PCR court made an unreasonable determination of the facts in denying relief upon this claim. As noted by the PCR court, counsel testified that he had a fair amount of contact with the petitioner over a year's time, and nothing in those conversations indicated that the petitioner was mentally deficient (App. 244). Counsel noted that the petitioner was "quite competent" (App. 245). The petitioner

did not present any evidence reflecting what would have been found had a mental examination or competency hearing been conducted.

Additionally, the petitioner also cannot show the PCR court unreasonably applied federal law in denying relief upon this claim. The PCR court properly applied *Strickand* in denying relief. First, the PCR court found counsel's testimony was credible and that the petitioner's testimony was not credible (App. 263-64). These findings are entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("But for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."). The petitioner failed to show that counsel was deficient. As noted by the PCR court, counsel's testimony clearly indicated that his interactions with the petitioner prior to his trial did not warrant a psychiatric evaluation. Further, the petitioner did not establish prejudice as he did not present any evidence that would have established that a psychiatric evaluation would have led to a different outcome at his trial. *See generally Moorehead v. State*, 496 S.E.2d 415, 417 (S.C. 1998) ( "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result."); *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir.1990) (allegation that trial counsel did ineffective investigation does not support relief absent proffer of the supposed witness' favorable testimony.). As a result, the petitioner fails to show he is entitled to federal habeas relief under 28 U.S.C. § 2254(d). Accordingly, this ground has no merit and should be dismissed.

### Ground Eight

In the first claim in Ground Eight, the petitioner alleges that trial counsel failed to investigate his request for a mental evaluation, which is essentially the same as Ground Seven. For the reasons set forth in Ground Seven above, this claim has no merit and should be dismissed.

28

In his second claim in Ground Eight, the petitioner asserts that his trial counsel was ineffective because counsel failed to investigate the laws and facts of the State's notice to seek LWOP. This claim was not specifically ruled upon by the PCR court. Neither the petitioner nor his counsel filed a Rule 59(e) motion to preserve the issue for appeal. *See Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) ("Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review."). As such, the issue is barred absent a showing a cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. As discussed above with regard to the other procedurally barred claims, the petitioner has made no such showing.

Furthermore, this ground fails on the merits. The PCR court found that the petitioner failed to meet his burden of proving trial counsel was ineffective under *Strickland*: on a similar claim alleged in his second PCR application:

> Regarding the Applicant's contention that trial counsel should have argued against his sentence, this Court notes that as notice of the State's intention to seek life imprisonment without parole was served, a guilty verdict meant an automatic imposition of that sentence. *See* S.C. Code Ann. § 17-25-45 (Supp. 2003).[5] This Court finds trial counsel explained this to the Applicant and did not err in declining to make such a frivolous argument.

(App. 265-66). At the petitioner's sentencing for burglary in the second degree and petit larceny, the prosecutor stated that the State served notice of intent to seek LWOP on the petitioner, and the petitioner's trial counsel agreed that notice was properly served (App. 142). Burglary in the second degree is a "serious offense" under South Carolina's "Life

---

[5]South Carolina Code § 17-25-45 provides, in pertinent part that, upon a conviction for a serious offense as defined by the section, "a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has two or more prior convictions for . . . (1) a serious offense, (2) a most serous offense, . . . or (3) any combination of the offenses listed in items (1), (2), and (3) . S.C. Code Ann. § 17-25-45(B).

Sentence for Person Convicted of Certain Crimes" statute. S.C. Code Ann. § 17-25-45(C)(2). The prosecutor recited the petitioner's prior record, which included an assault with intent to commit criminal sexual conduct in the first degree and armed robbery (App. 141-42), both of which are "most serious offenses" under the statute. S.C. Code Ann. § 17-25-45(C)(1). The petitioner does not show how trial counsel was ineffective in investigating the State's notice of intention to seek LWOP. He simply makes a conclusory statement unsupported by any facts or argument. Furthermore, the petitioner has not identified any information or evidence that counsel would have obtained had counsel engaged in the type of investigation that the petitioner asserts should have been done. The petitioner has not set forth any information that would support a finding the notice was improper or that his sentence was improper, and therefore he has failed to establish that his counsel's performance was deficient under *Strickland*. Based upon the foregoing, this ground for relief is without merit and should be dismissed.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 34) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

July 18, 2013
Greenville, South Carolina

30

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.